JEROME R. KERKMAN SC,

        Plaintiff,

                                 Case No. 20-cv-1779-pp

  v.

IRENE E. D'AMICO,

        Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE (DKT. NO. 6)**

---

On October 7, 2020, plaintiff Jerome R. Kerkman, S.C., doing business as Kerkman & Dunn, filed a complaint in Milwaukee County Circuit Court. Dkt. No. 1-1. The complaint asserted claims for breach of contract and unjust enrichment arising out of the defendant's alleged breach of a retainer agreement for legal services. Id. at 15-17.

On December 2, 2020, the defendant removed the case to the federal court for the Eastern District of Wisconsin. Dkt. No. 1. One week later, on December 7, 2020, the defendant filed the instant motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 6. Alternatively, she sought dismissal for improper venue under Rule 12(b)(3). Id.

## I.    Background

The plaintiff's claims arise from a retainer agreement between the parties in which the defendant hired the plaintiff to perform legal services. Dkt. No. 1-1

at ¶¶88-95. The plaintiff is a Wisconsin corporation with its principal place of business also in Wisconsin. Id. at ¶1. The defendant is a resident of Arizona. Id. at ¶2.

The parties met in 1994 when Jerome Kerkman was an attorney at a different Milwaukee law firm. Id. at ¶7. At the time, the defendant was the chief financial officer for Great Western Publishing; Kerkman was lead counsel on Great Western's Chapter 11 bankruptcy reorganization and reported to the defendant. Id. at ¶¶7-8. Although Great Western had terminated the defendant's employment around 1999 and Kerkman had formed his own law firm (Kerkman and Dunn, the defendant contacted Kerkman in 2003 and asked him to review a draft employment contract between the defendant and Structural I Company "for her potential employment as its president." Id. at ¶¶10-12. The two communicated with each other via phone and email regarding the employment contract, but Kerkman did not charge the defendant for his services. Id. at ¶¶12-15.

The plaintiff alleged that on April 5, 2006, Structural I terminated the defendant under the employment contract. Id. at ¶17. The defendant contacted Kerkman a few weeks later and asked him to act as a reference for her for a new position; she followed up with several emails. Id. at ¶18. Meanwhile, the defendant hired an Arizona law firm, Ryley Carlock & Applewhite (the Ryley firm), to mediate her termination from Structural I; the initial mediation did not resolve the issues and the mediation was continued. Id. at ¶20.

2

In June 2006, Kerkman invited the defendant for a social visit to Milwaukee. Id. at ¶21. The plaintiff asserts that while the defendant was visiting Milwaukee, the parties discussed the defendant's ability to pay the Ryley firm (which was charging her by the hour) and "possible legal representation by K&D on a partially contingent basis." Id. at ¶22.

In June 2006, the defendant allegedly sent Kerkman several emails seeking his advice, or asking for second opinions, on the mediation, but the mediation was unsuccessful. Id. at ¶¶23-24. The plaintiff asserts that the defendant then asked Kerkman and his law firm to represent her in a lawsuit against Structural I. Id. at ¶25. Kerkman drafted a retainer agreement in Milwaukee and sent it to the defendant by email. Id. The next day, Kerkman emailed the defendant a draft complaint against Structural I, which the defendant revised and sent back to Kerkman. Id. at ¶26. The plaintiff says that "at least four versions of the complaint were sent to [the defendant] and received back from [the defendant] by J. Kerkman in Milwaukee with [the defendant's] comments." Id. Two days later, the Ryley firm signed and filed the complaint against Structural I in Arizona state court. Id. at ¶27.

On July 11, 2006, Kerkman emailed from Milwaukee to the defendant what appears to have been the final version of the retainer agreement; the defendant executed the agreement the next day and emailed it back to Kerkman in Milwaukee. Id. at ¶¶28, 29. The agreement provided that the defendant had agreed to pay a monthly retainer of $2,500 and hourly rates of $100 for attorney time and $25 for paralegal time (reduced from the usual

3

hourly rates of $245 for attorney time and $95 for paralegal time). Id. at ¶31. It provided that K&D would be entitled to a contingency fee of 33% of any collection from the Structural I litigation (38% if an appeal was required) plus K&D's expenses minus the monthly retainer; the defendant granted K&D a lien equal to any funds recovered. Id. at ¶32. "The Retainer Agreement expressly stated that J. Kerkman was not licensed to practice law in Arizona and the Ryley Firm was retained as local counsel to provide J. Kerkman admittance on a *pro hoc vice* basis." Id. at ¶33. Finally, the agreement provided that if the defendant terminated K&D's services, she would remain responsible for all expenses up to the time of termination as well as the 33% or 38% contingent fee minus the amounts paid by monthly retainer. Id. at ¶34. After it was retained, K&D sent monthly invoices to the defendant and the defendant paid the $2,500 flat retainer. Id. at ¶35.

The plaintiff alleges that most of the legal work performed by Kerkman and other lawyers at K&D was performed in Milwaukee. Id. at ¶36. Kerkman did travel to California and Arizona for depositions and court appearances. Id. Initially, the Ryley firm from Arizona filed pleadings, but when the court switched to an electronic filing system, "K&D electronically filed pleadings from Milwaukee." Id.

Kerkman represented the defendant at a thirteen-day trial in Phoenix, Arizona; he had to stay in Arizona for three weeks in October/November 2008. Id. at ¶37. The jury found in favor of the defendant for the amount of unpaid compensation she sought, but it found that she had breached her fiduciary

4

duty to Structural I and awarded a $150,000 judgment against her. Id. at ¶38. The plaintiff asserts that "[d]uring the trial, J. Kerkman had repeatedly objected to submitting the fiduciary duty breach counterclaim to the jury because no pecuniary damages had been show, a necessary element for the claim." Id.

In December 2008, K&D filed post-trial motions seeking treble damages and an order overturning the jury's finding on the breach of fiduciary duty. Id. at ¶39. In June 2009, the court entered judgment in favor of the defendant in the amount of $910,616 but refused to treble the damages or to set aside the jury's finding, and award, on the breach of fiduciary duty claim. Id. at ¶40. Structural I appealed, and the defendant filed a cross-appeal on the breach of fiduciary duty issue. Id. at ¶41. Kerkman continued to represent the defendant, "taking supplementary examinations, obtaining documents, and drafting a complaint against Structural I to return substantial amounts taken out as fraudulent transfers." Id. at ¶42. On November 16, 2009, Kerkman gave the defendant a draft complaint containing thirty-one pages of facts. Id. at ¶42.

Sometime around December 2009, the defendant asked for a calculation of how much she owed K&D; Kerkman sent her a total that included the 38% contingency plus unpaid expenses, "but he cautioned that the actual total would depend on the amount collected on appeal." Id. at ¶44. A couple of weeks later, the defendant informed Kerkman that she was adding another Phoenix attorney, Alan Cook, to the Structural I litigation team, but that she had "not yet executed retention terms." Id. at ¶45.

5

Kerkman completed the fraudulent transfer complaint on December 14, 2009—it contained forty-seven pages of detailed facts—and sent the draft to the defendant. Id. at ¶46. Structural I filed its opening appellate brief on December 18, 2009. Id. at ¶47. The defendant's opening brief was due December 31, 2009, but K&D asked for an extension of that deadline because Structural I had fled a motion for relief from the judgment in the trial court. Id. at ¶48. Kerkman did not receive a response from the court to his motion for an extension of the December 31, 2009 deadline, so he finalized the brief (over 100 pages) and sent it to the Ryley firm to print and file. Id. at ¶49. Before the Ryley firm had a chance to file the brief, however, the Arizona Court of Appeals granted Kerkman's request for an extension of the deadline. Id. at ¶50. In early February 2010, the defendant asked for a Word version of the final appellate brief; Kerkman emailed the brief to the defendant on February 20, 2010. Id. at ¶51.

The plaintiff asserts that on March 3, 2020, Kerkman received an email from the defendant stating "that Attorney Michael Palumbo would assist her 'in meshing the issue of legal fees' of K&D and the Ryley Firm;" the plaintiff says that this was the "first time any issue over legal fees had been raised." Id. at ¶52. On March 8, 2020, Kerkman, an attorney from the Ryley Firm, Attorney Cook and Attorney Palumbo met in Phoenix to discuss legal fees. Id. at ¶53. "The March Meeting concluded with a request that [the defendant] provide concrete proposals to both K&D and the Ryley Firm." Id. at ¶54. K&D continued to represent the defendant on a motion to set aside the jury's

verdict. Id. at ¶55. The attorneys who were present at the March 8 meeting tried to set up another meeting in June 2010 but could not coordinate their schedules. Id. at ¶56. On June 17, 2010, Kerkman asked the defendant to give him a specific proposal for fees for K&D and the Ryley firm. Id. at ¶57. Two weeks later, on June 30, 2010, Attorney Palumbo informed Kerkman that another Phoenix attorney, Attorney Cohen, would "be taking over all aspects of the legal representation in the Structural I Matter." Id. at ¶58. A substitution of counsel was filed with the court on July 2, 2010. Id. at ¶59.

On July 28, 2010, Attorney Cohen's office sent Kerkman an email indicating that Cohen was working on the cross appeal/answering brief that was due that day in the court of appeals, and asking for Kerkman's draft appendix; Kerkman sent the appendix to Cohen. Id. at ¶60. Kerkman reviewed the brief Cohen had filed "and determined that with the exception of some organizational changes with cutting and pasting, the brief was substantially identical to the brief J. Kerkman had drafted, including arguments, references, and unique phrases used by J. Kerkman." Id. at ¶61.

On April 3, 2012,[1] the Arizona Court of Appeals affirmed the award to the defendant and reversed the breach of fiduciary duty verdict against the defendant; this resulted in a judgment of over $1,060,616 in favor of the defendant. Id. at ¶62.

---

[1] This may be a typographical error; the other dates in the complaint reference 2010.

7

On April 16, 2010, Attorney Palumbo sent Kerkman a letter indicating that the defendant proposed to send no further payment to K&D unless the defendant recovered funds from Structural I and that the parties would need "to agree upon a payment percentage reflecting several factors outlined in the letter." Id. at ¶63. Kerkman responded by accepting the proposal to defer payments until the defendant received funds from Structural I but declined to accept "[the defendant's] unilateral determination of the appropriate fee." Id. at ¶64. K&D reserved the right to determine how much the defendant collected from Structural I before deciding how much the defendant owed. Id.

Meanwhile, in 2010 the defendant filed a fraudulent transfer complaint "that was largely the culmination of J. Kerkman's earlier work." Id. at ¶65. In 2012, Structural I filed a petition for Chapter 11 reorganization and "sought reconsideration of the amount of [the defendant's] judgment award on remand." Id. at ¶66. Because K&D had a financial interest in the outcome of the Structural I matter, and because Kerkman had expertise in bankruptcy, he emailed Attorney Cohen and suggested that the defendant file a motion to dismiss the Chapter 11 proceeding; Cohen did not follow that advice. Id. at ¶67. Structural I's Chapter 11 reorganization eventually was converted to a Chapter 7 liquidation and a trustee was appointed. Id. at ¶68. "Structural I and its principals reached a settlement with the trustee on the fraudulent transfer claims." Id. at ¶69. The defendant objected to that settlement and it was not approved. Id. at ¶70. The bankruptcy court dismissed Structural I's bankruptcy case in 2015. Id. at ¶71. In January 2016, "some of the fraudulent

transfer claims were dismissed because [the defendant] failed to follow the procedural rules and the remaining claims were set for trial in fall 2019." Id. at ¶72. Kerkman continued to monitor court dockets, learning that in July 2019 a notice of settlement with Structural I was filed. Id. at ¶73. On July 30, 2019, Kerkman emailed Attorney Cohen to determine the amount of that settlement. Id. at ¶74. In response, Cohen said that the Structural I settlement hadn't yet been finalized and suggested the parties resolve the fee dispute through arbitration. Id. at ¶75. Kerkman again asked for the amount of the Structural I settlement, offering to comply with any confidentiality requirements related to the settlement. Id. at ¶76. On October 31, 2019, Kerkman received an email from Cohen indicating that Cohen was traveling but that he would confer with the defendant upon his return and respond to Kerkman. Id. at ¶77. That appears to be the last Kerkman heard from Attorney Cohen. Id. at ¶¶78-81.

While Cohen never provided the amount of the settlement, the plaintiff asserts that "it is reasonable to believe that the amount paid exceeded the judgment awarded of $1,060,616 because a higher amount would lead to a greater fee and the judgment accrued interest at the rate of 10% per annum under Arizona law from June 30, 2009, putting the amount due at more than $2 million." Id. at ¶82.

The plaintiff asserts that K&D represented the defendant from June 22, 2006 through July 2, 2010, during which it expended 1,949.50 professional hours (1,626.10 by Kerkman, 213 by other lawyers at K&D and 110.40 by law clerks); that Kerkman attended or took thirteen fact witness depositions and

9

two expert witness depositions; that K&D billed $188,860.50 at the reduced hourly rates and accrued $38,928.18 in expenses; and that the defendant paid or was credited $81,729.50 on the monthly payments (K&D applied $60,863.15 to fees and $20,866.35 to expenses). Id. at ¶83. The plaintiff asserts that the defendant never has paid the contingent fee called for by the retainer agreement. Id. at ¶84. K&D did as Cohen had suggested and filed a petition for arbitration with the State Bar of Arizona on the fee dispute; on September 30, 2020, the defendant refused to participate and the petition was dismissed October 1, 2020. Id. at ¶85.

The plaintiff seeks a monetary judgment in the amount of 38% of the settlement funds (minus the amounts applied from monthly payments) and unpaid costs. Id. at ¶¶95, 99.

## II. Subject-matter Jurisdiction

The court has diversity jurisdiction under 28 U.S. §1332 because there is complete diversity between the parties and the amount in controversy is greater than $75,000.

## III. Personal Jurisdiction

### A. Governing Law

Personal jurisdiction is a due process concept.

The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit . . . not offend 'traditional notions of fair play and substantial

10

justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 . . . (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 . . . (1940)).

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982). For a federal court to have personal jurisdiction over a defendant, the plaintiff is required to show that "[t]he defendant must have purposefully established minimum contacts with the forum." Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 942-43 (7th Cir. 2000) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)). The question is "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there . . . ." Id. at 943.

When a defendant moves to dismiss a case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to establish personal jurisdiction. Curry v. Revolution Laboratories, LLC, 949 F.3d 385, 392 (7th Cir. 2020) (citing Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003)). Without benefit of an evidentiary hearing, "the plaintiff bears only the burden of making a prima facie case for personal jurisdiction." uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 423 (7th Cir. 2010). The court takes "the plaintiff's asserted facts as true and resolve[s] any factual disputes in its favor." Id. at 424 (citing Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010); Purdue, 338 F.3d at 782).

In determining whether it has personal jurisdiction, a federal court looks to the law of the forum state in which it sits to determine the limits of its personal jurisdiction. Adv. Tactical Ordnance Sys., LLC v. Real Action

11

Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014). This court looks to the law of Wisconsin. Wisconsin courts employ a two-step inquiry when determining whether a court has personal jurisdiction over a nonresident defendant. First, the court determines whether any of the criteria for personal jurisdiction under Wisconsin's long-arm statute is satisfied. U.S. Venture Inc. v. McCormick Transp. LLC, No. 15-cv-990, 2015 WL 6694031, *2-3 (E.D. Wis. 2015) (citations omitted). Wisconsin's personal jurisdiction statute, Wis. Stat. §801.05, "has been interpreted to confer jurisdiction 'to the fullest extent allowed under the due process clause.'" Felland v. Clifton, 682 F.3d 665, 678 (7th Cir. 2012) (quoting Daniel J. Hartwig Assocs., Inc. v. Kanner, 913 F.2d 1213, 1217 (7th Cir. 1990)).

If the requirements of the long-arm statute are satisfied, the court then must consider whether the exercise of jurisdiction over the defendant is consistent with due process. U.S. Venture, 2015 WL 6694031 at *2-3. "[B]ecause Wisconsin presumes its long-arm statute merely codifies the federal due process requirements . . . the burden shifts to [the defendant] to show that jurisdiction would nonetheless violate due process." Total Admin. Servs. Corp. v. Pipe Fitters Union Local No. 120 Ins. Fund, 131 F. Supp. 3d 841, 844 (W.D. Wis. 2015) (quoting Logan Prods. Inc. v. Optibase, Inc., 103 F.3d 49, 52 (7th Cir. 1996)).

"The primary focus of [a court's] personal jurisdiction inquiry is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty., ___ U.S. ___, 137 S. Ct. 1773, 1779

(2017). The Supreme Court has identified "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Id. at 1780 (quoting Goodyear Dunlop Tires Operations, S.C. v. Brown, 564 U.S. 915, 919 (2011)). When the defendant is an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Id. at 1780 (quoting Goodyear, 564 U.S. at 919). Specific personal jurisdiction, however, "requires that the defendant's contacts with the forum state relate to the challenged conduct." Felland, 682 F.3d at 673. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting Goodyear, 564 U.S. at 919). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." Advanced Tactical, 751 F.3d at 801 (citing Walden v. Fiore, 571 U.S. 277, 284 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

> [N]ot just any contacts will do: "[f]or a state to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." [*Walden v. Fiore*, 571 U.S. 227, 134 S. Ct. 1115] at 1121 [(2014)] (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Id. at 1126. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum . . . ." Id. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 . . . (1985)).

13

Id. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." Purdue, 338 F.3d at 780. The due process requirement of "fair warning" to an out-of-state defendant that he might be sued in the forum state "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum. Burger King, 471 U.S. at 472 (citing Keeton, 465 U.S. at 774). "Such 'purposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state." Curry, 949 F.3d at 398.

B.    Discussion

The court does not have general jurisdiction over the defendant; the defendant is a resident of Arizona. Dkt. No. 1-1 at ¶2. The issue is whether the court has specific personal jurisdiction over the defendant.

The defendant argues that she never availed herself of Wisconsin law. Dkt. No. 7 at 5. She points out that the complaint alleges that she traveled to Wisconsin only one time, on a social visit. Id. at 6. The defendant asserts that the plaintiff "made certain overtures about [the defendant's] Arizona employment litigation," but says there is no suggestion that *she* brought up the issue or that she traveled to Wisconsin for the purpose of hiring a lawyer or engaging the plaintiff. Id. at 6-7. She says that the parties neither reached agreement nor discussed terms while she was in Wisconsin. Id. at 7.

While acknowledging that the complaint alleges that she later followed up to discuss the plaintiff's representation of her in the Arizona litigation, she

14

asserts that she "was not purposely availing herself of Wisconsin, she was availing herself of [the plaintiff's] assistance." Id. She characterizes the fact that Kerkman lived in Milwaukee as "coincidental at best." Id. She asserts that everything she did thereafter, she did outside of Wisconsin. Id. She asserts that the facts that Kerkman reviewed drafts in Milwaukee or took calls from her in Milwaukee or opened mail from her in Milwaukee were "coincidental" and not sufficient to confer personal jurisdiction. Id. The defendant cites the Seventh Circuit's decision in Brook v. McCormly, 873 F.3d 549 (2017) in support of her arguments. Id. at 8. The plaintiff also asserts that any actions Kerkman or others in his firm took in Wisconsin are not sufficient to confer jurisdiction; she says it is *her* actions that determine personal jurisdiction. Id. at 8-9. She concludes that "[t]here is no suggestion that [the defendant] had any relationship with Wisconsin other than her relationship with Mr. Kerkman," and that "this particular relationship with Mr. Kerkman concerned Arizona, not Wisconsin." Id. at 9.

### 1. *Wisconsin Long-Arm Statute*

The complaint asserts that the court has personal jurisdiction under Wis. Stat. §801.05(4)(a), (5)(a) and (5)(b). Dkt. No. 1-1 at ¶¶4-5.

The plaintiff alleges that under Wis. Stat. §801.05(4)(a), it was injured in Wisconsin by acts the defendant took outside of the state. Dkt. No. 9 at 6. The plaintiff argues that the defendant hired K&D through the retainer agreement to provide legal services outside of the state with full knowledge that K&D was in Wisconsin. Id. at 7. While the plaintiff admits that some of Kerkman's work

was performed in California and Arizona, it alleges that he performed most of his work in Milwaukee. Id. The plaintiff argues that the injury suffered—the defendant's failure to pay the fees required under the retainer agreement—was suffered in Wisconsin. Id.

Wis. Stat. §801.05(4)(a) says that a Wisconsin court has personal jurisdiction "[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either: (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant . . . ." The plaintiff alleges that it was injured in Wisconsin when the defendant failed to honor the retainer agreement. The plaintiff also alleges— and the defendant does not appear to dispute—that Kerkman provided service activities to the defendant in Wisconsin (drafting legal documents, communicating about the Arizona litigation, etc.) on behalf of the defendant. The plaintiff's allegations are sufficient to provide the court with personal jurisdiction under Wis. Stat. §801.05(4)(a).

The plaintiff also argues that under Wis. Stat. §801.05(5)(a), the defendant promised to pay it for services to be performed by the plaintiff in Wisconsin. Dkt. No. 9 at 7. The plaintiff and defendant agreed to the terms of the retainer agreement in July 2006; one of those terms obligated the defendant to pay for the legal services rendered by the plaintiff, and to pay in a particular manner (including a contingency fee). While the defendant argues

16

that the agreement pertained to a lawsuit in Arizona, she admits that the agreement stated she would need to hire local counsel. Dkt. No. 7 at 3.

Wis. Stat. §801.05(5)(a) gives a Wisconsin court personal jurisdiction in any case which "[a]rises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff . . . ." The plaintiff alleges that the defendant promised to pay the plaintiff for services to be performed in this state—drafting documents, conducting legal analysis, preparing for hearings. The complaint alleges, and the defendant does not dispute, that the agreement required her to have local counsel for activities that had to be done in Arizona. The plaintiff's allegations are sufficient to provide the court with personal jurisdiction under Wis. Stat. §801.05(5)(a).

Finally, the plaintiff alleges that under Wis. Stat. §801.05(5)(b), the plaintiff performed services within Wisconsin for and authorized by the defendant. Dkt. No. 9 at 7-8. The court already has discussed the services the plaintiff performed and the plaintiff has alleged that the defendant authorized those services through the retainer agreement. Wis. Stat. §801.05(5)(b) provides a Wisconsin court with personal jurisdiction in a case which "[a]rises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by

17

the defendant . . . ." The plaintiff's allegations are sufficient to provide the court with personal jurisdiction under Wis. Stat. §801.05(5)(b).

Taking the plaintiff's asserted facts as true—as the court must when determining whether it has personal jurisdiction—the court concludes that the plaintiff has asserted a *prima facie* case for personal jurisdiction under at least three provisions of Wisconsin's long-arm statute.

2. *Due Process*

Given the reach of Wisconsin's long-arm statute, it follows that it does not violate the principles of due process for the defendant to defend against the suit in Wisconsin. While the defendant is correct that the court cannot rely solely on the plaintiff's connections with the forum state to find specific personal jurisdiction over the defendant, Walden, 571 U.S. at 285, the defendant's conduct in this case went farther than simply having phone or email contacts with a Wisconsin resident.

In Stayart v. Hance. 305 Wis.2d 380 (Wis. Ct. App. 2007), the plaintiff—a Wisconsin resident and Illinois-licensed attorney—appealed from the dismissal for lack of personal jurisdiction his breach of contract claim for unpaid legal fees against a former Tennessee client. Id. at 384. The court of appeals noted, in discussing the due-process analysis, that it could "presume that compliance with the long-arm statute is compliance with the due process requirements," id. at 391 (citing Brown v. LaChance, 165 Wis.2d 52, 67 (Wis. Ct. App. 1991), though it noted that a "defendant may rebut the presumption by demonstrating that is or her contact with Wisconsin were insufficient to justify

18

suit here," id. (citing State ex rel. N.R.Z., 152 Wis. 97, 105 (Wis. 1989)). The court concluded that because the defendant contacted the plaintiff at the plaintiff's Wisconsin office seeking legal services, the fee contract indicated that the plaintiff's office was in Wisconsin, and the defendant agreed in writing to a business relationship with a Wisconsin resident, resulting in that resident performing services for the defendant in Wisconsin on the defendant's behalf, the plaintiff had met his burden to show minimum contacts. Id. at 393.

The defendant argues that Stayart was decided before the U.S. Supreme Court refined the personal jurisdiction requirement in Walden and in Daimler AG v. Bauman, 571 U.S. 117, 122 (2014). Dkt. No. 13 at 5. She also asserts that in Stayart, the Wisconsin Court of Appeals relied on the fact that the defendant contacted the plaintiff in Wisconsin to seek legal services, and insists that she did not contact the plaintiff in Wisconsin to solicit legal services. Dkt. No. 13 at 6.

While it is true that Stayart was decided in 2007, the outcome likely would have been the same had it been decided after the Supreme Court decided Walden and Bauman. The Stayart court did not base its decision solely on the fact that the defendant solicited the plaintiff's services. It also determined that the defendant "purposefully availed himself of the privilege of doing business in Wisconsin by initiating and agreeing in writing to a business relationship with [the plaintiff], a Wisconsin resident, resulting in [the plaintiff] performing numerous legal services in Wisconsin on [the defendant's] behalf." 305 Wis.3d at 393. The solicitation was one of the issues the court considered,

19

but it also considered the defendant's agreement to enter into a business relationship with a Wisconsin resident that required that Wisconsin resident to perform services in Wisconsin for the defendant.

The complaint in this case does not explain who solicited whom, and the court agrees with the defendant that the social visit the defendant made to Wisconsin in 2006 does not factor into the personal jurisdiction analysis. What *does* factor into the analysis is that eventually, the defendant chose to enter into a contractual agreement with a Wisconsin attorney whom she knew was not licensed in Arizona, and whose offices she knew to be in Wisconsin. She chose to engage a Wisconsin lawyer, at a Wisconsin law firm, to perform legal work. She was aware that Kerkman, along with other attorneys at his law firm, would be drafting complaints and crafting legal arguments on her behalf in Wisconsin and, after the advent of electronic filing, filing documents on her behalf from Wisconsin. This conduct goes beyond "checking in" phone calls and emails with someone who happens to reside in Wisconsin.

In asserting that the court does not have personal jurisdiction, the defendant cites the Seventh Circuit's decision in Brook, 873 F.3d 549. Dkt. No. 7 at 8. Brook—an Illinois resident—hired McCormley, an attorney at a law firm with its principal place of business in Arizona, to represent the company of which he was president in a lawsuit in Arizona. Brook, 873 F.3d at 551. The Seventh Circuit analyzed the personal jurisdiction question under the Illinois long-arm statute, which—like the Wisconsin statute—"permits the court to exercise jurisdiction to the full extent permitted by the Due Process Clause of

20

the Fourteenth Amendment." Id. at 552. The Seventh Circuit concluded that the plaintiff had not established personal jurisdiction under the Illinois long-arm statute—he had not alleged

> (1) "[t]he commission of a tortious act within this State;" (2) "[t]he making of or performance of any contract or promise substantially connected with this State;" and (3) "[t]he breach of any fiduciary duty within this State." These assertions are based on correspondence from Arizona, telephone calls, the contract governing the attorney-client relationship, attorneys' fees sent from Illinois, and Brook having felt the injury in Illinois. We find this unpersuasive. Brook attempts to use Defendants' relationship with himself to establish personal jurisdiction, not the Defendants' relationship with Illinois.

Id. at 553.

The court in Brook never got to the due process analysis, because it found that the plaintiff had not established personal jurisdiction under the Illinois long-arm statute. Given the provisions of the Illinois statute Brook cited, this makes sense. He cited the provision of the statute based on the commission of a tortious act in Illinois, the provision based on the making of a contract "substantially connected" with Illinois and the provision relating to a breach of fiduciary duty in Illinois. The plaintiff in this case cites different provisions of Wisconsin's long-arm statute; the court has concluded that the allegations are sufficient to provide jurisdiction under that statute.

The defendant is correct that the Seventh Circuit discussed Walden, and concluded that the defendants "never sought out nor conducted business in Illinois, rather [Brook's company] sought out legal services from Defendants." Id. at 553. It concluded that "[a]ll business done on behalf of [Brook's company] was done in Arizona by an Arizona based law firm with Arizona lawyers," and

21

concluded that "Brook, a substituted plaintiff, is the only link Defendants have with the forum State." Id. But the plaintiff in this case is not a "substituted plaintiff." The business done on behalf of the defendant in this case was not all done by an Arizona based law firm with Arizona lawyers; the complaint alleges that much of that work was done by a Wisconsin-based law firm and Wisconsin lawyers. True, those Wisconsin lawyers—Kerkman, particularly—did in-person litigation in Arizona. But drafting documents, doing legal research, revising drafts and more took place in Wisconsin. And as the court indicated, it is not clear who solicited whom. The defendant insists that Kerkman made the first overture during the defendant's 2006 social trip to Wisconsin. Perhaps facts will bear that out. But even if it is true, other factors here demonstrate that it does not violate due process principles to expect the defendant to defend this suit in Wisconsin.

Finally, the defendant argues that Kerkman "voluntarily subjected himself to the jurisdiction of Arizona when he applied for *pro hoc vice* admission" to the State Bar of Arizona to be able to appear in court there on behalf of the defendant. Dkt. No. 7 at 3, 9. The defendant asks the court to take judicial notice of the fact that the State Bar of Arizona's *pro hoc vice* admission application requires applicants to certify that the "[a]pplicant shall be subject to the jurisdiction of the courts and agencies of the State of Arizona and to the State Bar of Arizona with respect to the law of this state governing the conduct of attorneys." Id. at 3-4. This argument has no merit. This lawsuit does not involve attorney misconduct. It involves substantive claims of breach

22

of contract and unjust enrichment. Whether Kerkman agreed to be subject to Arizona jurisdiction in any ethics dispute has no bearing on personal jurisdiction over the substantive claims.

Because the plaintiff's claims arise from an agreement the defendant voluntarily signed, agreeing to retain a Wisconsin law firm and Wisconsin lawyers to perform legal services for her, some of which would necessarily be performed in the state of Wisconsin, and because the plaintiff has alleged a breach of that contract which resulted in injury in the state of Wisconsin, the plaintiff has carried the burden of showing that this court has personal jurisdiction under the Wisconsin long-arm statute and under the principles of due process.

## IV.    Venue

The defendant also argues that the Eastern District of Wisconsin is an improper venue for the lawsuit. Dkt. No. 7 at 9. The complaint alleges that venue is proper because the plaintiff's claim arose in Milwaukee County and because the plaintiff "designates Milwaukee County as its selected venue." Dkt. No. 1-1 at ¶6.

In federal court, venue is appropriate either in the judicial district where "any defendant resides, if all defendants are residents of the State in which the district is located," or in the district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(b). Because the defendant resides in Arizona, venue in Wisconsin is proper only if a substantial part of the events or omissions giving rise to the claim occurred in Wisconsin.

23

The defendant argues that venue is proper in Arizona, because the "the vast majority of the action in this case occurred in Arizona, not Wisconsin." Dkt. No. 7 at 8. It is true, as the defendant states, that the litigation in which the plaintiff represented the defendant took place in Arizona, concerned Arizona law and involved an Arizona plaintiff and an Arizona defendant. Id. at 10. It also is true that the eventual settlement occurred in Arizona and that several potential witnesses, such as the defendant's local counsel, were in Arizona. Id. But Kerkman performed a significant portion of his services, as did his law firm, in Wisconsin. Because Kerkman and his law firm were located in Wisconsin, research, writing, editing and other activities that did not involve depositions or court appearances necessarily had to take place in Wisconsin. Once electronic filing became available, Kerkman and his firm filed documents from Wisconsin. The money allegedly owed under the agreement was to be sent to the plaintiff in Milwaukee, Wisconsin. Integrated Process Eng'rs & Constructors, Inc. v. Novo Nordisk Pharm. Indus., Inc., No. 20-cv-435, 2020 WL 5943667, at *4 (W.D. Wis. Oct. 7, 2020) (finding venue where "the products at issue were manufactured in this district, communications related to the purchase order occurred in or were directed to this district, and defendants were to send payments for the purchase order to this district."); PKWare, Inc. v. Meade, 79 F. Supp. 2d 1007, 1016-17 (E.D. Wis. 2000) (finding venue was proper in the district where the "defendants were obliged under the agreement to deliver copies of software, make royalty payments and send sales reports to plaintiff . . . and allegedly failed to do so.").

24

The court concludes that a substantial part of the events or omissions giving rise to this litigation occurred in Milwaukee, Wisconsin. Although Arizona also may be a proper venue for this litigation, venue may be proper in more than one district. United Cent. Bank v. Wells St. Apartments, LLC, No. 11-C-0693, 2012 WL 4794600, at *2 (E.D. Wis. Oct. 9, 2012) (citing In re LimitNone, LLC, 551 F.3d 572, 575 (7th Cir. 2008). The court will deny the defendant's motion to dismiss for improper venue.

## V.     Conclusion

The court **DENIES** the defendant's motion to dismiss for lack of personal jurisdiction and improper venue. Dkt. No. 6.

Dated in Milwaukee, Wisconsin this 28th day of September, 2021.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**